IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADRIAN D. PUGH                        :

                                      :

      v.                              :      Civil Action No. DKC 13-2862

                                      :

MONTGOMERY COUNTY BOARD
OF EDUCATION                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are the following motions: (1) a motion for summary judgment filed by Plaintiff Adrian D. Pugh ("Plaintiff") (ECF No. 46); and (2) a cross-motion for summary judgment filed by Defendant Montgomery County Board of Education ("Defendant") (ECF No. 59). Also pending is Plaintiff's motion to deny a jury trial. (ECF No. 50). The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment will be denied, and her motion to deny a jury trial will be denied as moot.

**I.    Background**

   **A.    Factual Background**

Plaintiff, an African American woman, has worked for Defendant as a paraeducator, or teacher's assistant, since 2004. (ECF No. 59-3 ¶ 5). This case arises out of two instances in

which Defendant denied Plaintiff's application for a teacher position. Because Plaintiff was not certified as a teacher, she attempted to obtain a Conditional Degree Certificate ("CDC") from Defendant. (*Id.* ¶ 7). A CDC is a temporary two-year provisional status for otherwise uncertified teachers who are pursuing their certification. Maryland law states that "[a] local school system shall request a [CDC] only if a local school system is unable to fill a position with a qualified person who holds a professional certificate." Code of Maryland Regulations ("COMAR") 13A.12.01.08A(1). In light of applicable state and federal law requiring or incentivizing the hiring of certified teachers, Defendant's goal was to reduce or eliminate the use of CDCs and hire certified teachers whenever possible. (*See* ECF No. 59-7). Accordingly, Defendant hired 143 teachers with a CDC in 2006, but only 46 in 2008. (ECF No. 59-3 ¶ 13). Because of this desire to limit the use of CDCs, Defendant requires that an applicant for a CDC fulfill the following five criteria: (1) three references with ratings of "highly effective," including a reference from the most recent or current supervisor; (2) content, knowledge, or background in the relevant subject area; (3) some form of prior relevant teaching experience; (4) completion or near completion of an educational partnership program; and (5) a "highly recommend" interview score or "highly effective" marks from all references. (*Id.* ¶ 10).

2

Plaintiff first applied for a CDC in November 2008, in an attempt to fill a vacancy for a special education teacher at Albert Einstein High School. (*Id.* ¶ 15). The position was filled by a certified teacher. (*Id.* ¶ 17). On April 9, 2009, Plaintiff wrote to Susan Marks, the Associate Superintendent for Human Resources, "to request [her] consideration for granting [Plaintiff] provisional certification to teach [s]pecial [e]ducation." (ECF No. 59-5). Plaintiff sought a CDC to teach special education, but noted that she would "welcome the opportunity to teach Spanish as well" given her background and education. (*Id.* at 2). In response, Ms. Marks denied Plaintiff's request because of "the number of credits that [Plaintiff] still need[ed] to take to complete [her] coursework" to receive her certification. (ECF No. 59-6). Ms. Marks informed Plaintiff about Defendant's goal of hiring 100 percent certified teachers, and encouraged her to "continue to pursue [her] goal of becoming a teacher" with Defendant, particularly because Plaintiff appeared close to obtaining certification for Spanish. (*Id.*).

Plaintiff did not provide Defendant with documentation that she was working towards certification, instead continuing to pursue a CDC. In July 2009, Plaintiff provided Defendant with additional information, including information regarding references. (ECF No. 59-7). On July 24, Linda Johnson, a

staffing coordinator for Defendant, encouraged Plaintiff to pursue certification because of Defendant's policy favoring certified teachers. (*Id.*). Ms. Johnson noted that, particularly due to the economic situation in 2009, Defendant had far more teachers applying "who hold or are eligible for standard teaching certificates and far less positions than usual." (*Id.*). On August 3, Plaintiff wrote to Larry Bowers, Defendant's Chief Operating Officer, requesting approval for a CDC. (ECF No. 59-8). Also in August, Ms. Johnson e-mailed Ms. Marks to discuss Plaintiff's requests. (ECF No. 59-9). Ms. Johnson noted that in "every other case" of a paraeducator being hired by Defendant as a teacher, "there has been a principal advocating" on the paraeducator's behalf, but this was not the case with Plaintiff. (*Id.*). Ms. Johnson also noted that Defendant had "candidates holding or eligible for standard certificates in the pool who also have stronger references." (*Id.*).

After corresponding with Ms. Johnson, Ms. Marks obtained Plaintiff's remaining references from Nelson McLeod, the principal of a school at which Plaintiff had previously worked, and from Tenaeya Rankin, a teacher with whom Plaintiff worked. Mr. McLeod wrote that Plaintiff "was friendly and worked effectively within the special education team," but that "[b]ased on two incidents with staff, [he did] NOT feel

comfortable recommending her." (ECF No. 59-10). Ms. Rankin completed a recommendation form that ranked various aspects of Plaintiff's "performance criteria" and "personal qualities" with a ranking of highly effective or excellent; effective or acceptable; not effective or not acceptable; or no basis for judgment or do not know. Concerning performance criteria, Plaintiff received zero "highly effective" ratings, one "effective" rating, two "not effective" ratings, and seven "no basis for judgment" ratings. (ECF No. 59-11). As to personal qualities, Plaintiff received zero "excellent" ratings, four "acceptable" ratings, four "not acceptable" ratings, and one "do not know" rating. (*Id.*). Ms. Rankin also noted, in response to a question asking if she knew "of any specific reason why [Plaintiff] would not make a desirable staff member": "Professional relationships with leadership; lack of interpersonal communication skills." (*Id.* at 1). Ms. Rankin further relayed that:

> [Plaintiff], at times, lacks appropriate boundaries in her communication with leadership – whether classroom teacher, resource teacher, or administration. Further, her rapport with students, specfically [sic] students with behavior issues, does not always positively motivate students to regain focus and/or decrease negative time spent out of the classroom. Her involvement in such cases has often invoked negative reinforcement. If she returns to [the school] as a para-educator, her duties will not include serving students

> during I.S.S. (in-school suspension) as this
> has not proven to be successful.

(*Id.* at 2).  Ms. Marks also obtained a reference from Panagiota Tsonis, another school principal with whom Plaintiff worked. Ms. Tsonis informed Ms. Marks that she would "recommend [Plaintiff] as a teacher candidate." (ECF No. 61-8).

On September 29, Plaintiff wrote Ms. Marks to "follow[] up to see what has developed from [her] contacting other references for [Plaintiff's] application for teaching." (ECF No. 59-12). Ms. Marks responded:

> This e-mail is a follow-up to our meeting and correspondence regarding your request for conditional certification. I have reviewed all your documentation and I also contacted the additional references that you provided me.  At this time, I will not support granting you conditional certification to be considered for special education positions [with Defendant].
> I know that you have worked hard to complete your coursework to become a special education teacher, however, I believe that the student teaching experience or an experience as a long-term substitute teacher is critical to becoming a teacher [with Defendant].  I suggest you consider applying to one of our partnership programs which will allow you to have a student intern experience.

(*Id.*).

6

B.   **Procedural History**[1]

On March 3, 2010, Plaintiff completed an "intake questionnaire" with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 61-3). On or about June 28, Plaintiff filed a charge of discrimination with the EEOC. (ECF No. 59-13). Plaintiff's charge references her communication with Ms. Marks in August and September 2009, but does not mention her November 2008 application.[2] On June 27, 2013, the EEOC dismissed the charge and advised Plaintiff of her right to sue. (ECF No. 1-2).

Plaintiff, proceeding *pro se*, sued Defendant and the EEOC in this court on September 27, 2013 alleging that Defendant failed to hire her based on race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (ECF No. 1). The court issued a memorandum opinion and order on June 30, 2014, dismissing the claims against the EEOC. (ECF Nos. 27; 28). On May 28, 2015, after Plaintiff corrected issues with service on Defendant, the court denied Defendant's motion to dismiss. (ECF Nos. 42; 43). On June 29, Plaintiff filed the pending motion for summary judgment (ECF No. 46), which is fully

---

[1]   Additional procedural history is provided in a prior memorandum opinion. (ECF No. 42, at 2-3).

[2]   Although the charge also included allegations of retaliation, this case includes no such allegations.

briefed (ECF Nos. 54; 55).  The next day, Plaintiff filed the
pending motion to deny a jury trial.  (ECF No. 50).  Following
discovery, Defendant filed the pending cross-motion for summary
judgment.  (ECF No. 59).[3]  Plaintiff filed a response and
supplemental response (ECF Nos. 61; 62), Defendant replied (ECF
No. 63), and Plaintiff filed a surreply (ECF No. 64).

---

[3] In its motion for summary judgment, Defendant argues for
dismissal of this action because Plaintiff failed to attend her
deposition.  (ECF No. 59-1, at 10-11).  This argument played no
role in the court's decision to enter summary judgment for
Defendant.  Federal Rule of Civil Procedure 37(d)(1)(B) requires
that a party moving for sanctions as a result of the other
party's failure to attend its own deposition "include a
certification that the movant has in good faith conferred or
attempted to confer with the party failing to act in an effort
to obtain the answer or response without court action."
Defendant has neither included a certification nor shown such a
good faith effort, and, particularly in light of Plaintiff's *pro
se* status, it is disappointing that defense counsel refused even
to entertain Plaintiff's request to reschedule her deposition or
compromise in any way.  (*See* ECF No. 61-26).
     Moreover, in the case Defendant cites to support its
request for dismissal, Judge Quarles ultimately dismissed the
case only after the plaintiff failed to attend her deposition on
multiple occasions, including in defiance of a court order,
showing a complete lack of intent to be deposed over the course
of a highly contentious year of discovery disputes.  *See Rogler
v. Alexandra M. Fotos*, No. WDQ-14-228, ECF No. 209 (Jan. 21,
2016).  Judge Quarles noted that "'only the most flagrant case,
where the party's noncompliance represents bad faith and callous
disregard for the authority of the district court and the Rules,
will result in the extreme sanction of dismissal.'"  *Id.* at 21
(quoting *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.,
Inc.*, 872 F.2d 88, 92 (4th Cir. 1989)).  Plaintiff's actions here
do not reach the requisite level of bad faith and callousness to
warrant dismissal.

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314

(4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).  Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).  Although *pro se* litigants are to be given some latitude, the above standards apply to everyone.  Thus, as courts have recognized repeatedly, even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments.  *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D.Md. 2011) (citing cases).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011).  The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."

10A Charles A. Wright, et al., Federal Practice & Procedure §
2720 (3d ed. 1998).

## III. Analysis

### A.   Administrative Exhaustion and Timeliness

Generally, under Title VII, a charge of discrimination must
be filed with the EEOC within 180 days after the alleged
unlawful employment practice occurred.   42 U.S.C. § 2000e-
5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618,
621 (2007) ("[T]he time for filing a charge of employment
discrimination with the [EEOC] begins when the discriminatory
act occurs.").   In a "deferral" jurisdiction, however, the
period is extended to 300 days.   *See Edelman v. Lynchburg Coll.*,
300 F.3d 400, 404 n.3 (4th Cir. 2002); *Prelich v. Med. Res.,
Inc.*, 813 F.Supp.2d 654, 661 (D.Md. 2011).   Maryland is a
deferral state under Title VII, and the 300-day timeframe
applies.   *See, e.g., Burgess v. Sys. High Corp.*, No. ELH-14-
3895, 2015 WL 6956516, at *3 (D.Md. Nov. 10, 2015) (citations
omitted).   The statutory window applies to any "discrete acts"
of discrimination, "such as termination, failure to promote,
denial of transfer, or refusal to hire . . . .   Each incident of
discrimination and each retaliatory adverse employment decision
constitutes a separate actionable 'unlawful employment
practice.'"   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
114. (2002).   "Charges filed outside [the statutory window] are

11

barred, but a discriminatory allegation may still constitute relevant background evidence for valid claims." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

This suit relates to two allegations of discrimination: the failure to hire for the special education opening in November 2008; and the failure to hire Plaintiff or grant her a CDC throughout 2009, which culminated with Ms. Marks's e-mail on September 29. Plaintiff argues that no part of her claim should be time-barred because she alleges "on-going discrimination" that encompasses actions taken in November 2008. (ECF No. 61-1, at 2-3). Plaintiff also notes that the court denied Defendant's timeliness argument when ruling on its motion to dismiss. In ruling on Defendant's motion to dismiss, the court was required to take the facts alleged in the complaint as true. In doing so, the undersigned noted that the facts in the complaint appeared to allege that it took until September 2009 for Defendant to deny Plaintiff the position for which she applied in November 2008. (ECF No. 42, at 8-9). The current record at the summary judgment stage paints a different picture. Plaintiff is asserting discriminatory failure to hire based on two discrete acts, such that the continuing violation doctrine does not apply. *Janey v. N. Hess Sons, Inc.*, 268 F.Supp.2d 616,

622-23 (D.Md. 2003) (not applying the continuing violation doctrine to discrete failure to promote or hire allegations). In November 2008, Plaintiff applied for a specific vacancy and was denied in favor of a certified teacher.   Then, throughout 2009, Plaintiff worked with Defendant to obtain a CDC in an attempt to place her name and application into a more generic applicant pool.   Accordingly, Defendant's failure to hire Plaintiff for the vacancy in November 2008 is time-barred because it occurred more than 300 days before Plaintiff filed her EEOC charge in June 2010.[4]

   **B.   *McDonnell Douglas***

   Title VII prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2525 (2013).   To survive a motion for summary judgment, a plaintiff must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision; or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that "the employer's proffered

---

   [4] Plaintiff points to her EEOC Intake Questionnaire as proof that she filed a charge in March 2010.   (ECF No. 61-3).   Even assuming *arguendo* that this was a proper charge, Plaintiff's claims relating to November 2008 would still be time-barred.

permissible reason for taking an adverse employment action is actually a pretext for [discrimination]." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Here, Plaintiff must rely on the *McDonnell Douglas* framework because she offers no direct evidence.

Under the *McDonnell Douglas* framework, once the plaintiff meets her initial burden of establishing a *prima facie* case for discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

1.  *Prima Facie* Case

To establish a *prima facie* case of discriminatory failure to hire based on race, Plaintiff must show that: (1) she is a member of a protected class; (2) the employer had an open position for which she applied; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998) (citations omitted); *see Burdine*, 450 U.S. at 253, 253 n.6. Plaintiff has failed to establish a *prima facie* case of discrimination because she has not put forth evidence sufficient to satisfy the third and fourth prongs.[5]

Defendant argues that Plaintiff was not qualified for a teaching position because she was not a certified teacher and did not meet the requirements for obtaining a CDC. Plaintiff counters that Defendant's arguments conflate the requirements for becoming a certified teacher with those for obtaining a CDC, and she was qualified for a CDC. (ECF No. 61-1, at 5-6). Plaintiff's assertions do not overcome the undisputed evidence in the record that she did not meet Defendant's qualifications

---

[5] Defendant asserts that Plaintiff did not actually apply to an open position during in 2009, failing the second prong as well. Plaintiff counters that Defendant's screening process prevented her from even submitting her application to the database. (ECF No. 61-1, at 15-16). It is not necessary to decide this issue, however, because Plaintiff has failed to satisfy the third and fourth prongs.

for a CDC.   Most glaringly, Plaintiff did not obtain three
references with ratings of "highly effective."   In fact, she
received no ratings of "highly effective," and two of her
references conveyed serious reservations.   Plaintiff's
conclusory attempt to undermine the references' credibility is
unavailing and irrelevant.   Thus, Plaintiff's assertion that she
met Defendant's criteria for a CDC is not supported by the
evidence.   *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th
Cir. 2000); *Mungro v. Giant Food, Inc.*, 187 F.Supp.2d 518, 522
(D.Md. 2002) ("What matters is not the employee's self-
perception regarding the quality of his [qualifications], but
the perception of the decision-maker." (citation and internal
quotation marks omitted)).   Plaintiff's citation to "evaluation
forms" from September 2010 and February 2013 noting that she
"meets competency" is not relevant to her qualification and
references in 2009, and it does not establish that she received
ratings of "highly effective."   (ECF Nos. 61-14; 61-17).
Nothing in the record indicates that Plaintiff satisfied
Defendant's criteria for a CDC.

In addition, Plaintiff has not shown facts establishing
that she was rejected for the position under circumstances
giving rise to an inference of unlawful discrimination.
Plaintiff's primary contention is that "[w]hite and/or [n]on-
African-American [c]omparators are hired consistently" with

16

CDCs.  (ECF No. 61-1, at 17-18).  Plaintiff puts forth no facts, however, to support this assertion.  Materials cited by both parties show that, in 2008-2009, Defendant hired 46 teachers with a CDC, 10 of whom were African American.  (ECF Nos. 59-4; 61-4).  Nothing in the record indicates that these 46 individuals are similarly situated to Plaintiff, in that they have similar qualifications.  *See Dones v. Donahoe*, 987 F.Supp.2d 659, 669 (D.Md. 2013) (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)).  In her letter to Mr. Bowers, Plaintiff asserts that she "personally know[s] of at least 5 people who have taught and/or are teaching with [Defendant] under provisional certification.  Without knowing [Plaintiff's] situation, these people have shared with [Plaintiff] how easily they were hired to teach provisionally."  (ECF No. 59-8, at 3).  Plaintiff has not put forth any evidence regarding these five individuals or any individual who worked with a CDC, and such conjecture is not sufficient to satisfy her burden at the summary judgment stage.

### 2.  Legitimate, Non-Discriminatory Reason and Pretext

Even if Plaintiff could establish a *prima facie* case of discrimination, she has failed to show that Defendant's legitimate, non-discriminatory reason for not hiring her is pretext for discrimination.  Defendant has put forth evidence supporting its stated legitimate reason of not hiring Plaintiff,

which is that she was not certified and did not meet Defendant's criteria to obtain a CDC.  Defendant was strongly incentivized by statute to hire certified teachers.  (ECF No. 59-3 ¶¶ 9-13).  Thus, Defendant established strict criteria for potential CDC applicants, criteria which Plaintiff did not meet.  (*Id.* ¶ 10).  Defendant made this clear in all communications with Plaintiff.  (ECF Nos. 59-6; 59-7; 59-12).  Defendant's strong preference to hire certified teachers is further supported by a letter from Mr. Bowers to all instructional data assistants, paraeducators, and substitute teachers encouraging "aspiring teachers" to apply for scholarships to assist them in obtaining certification.  (ECF No. 61-24).  Defendant has met its burden of showing a legitimate, non-discriminatory reason for not hiring Plaintiff.

In order to show pretext, Plaintiff must "prove *both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (emphases in original) (citation and internal quotation marks omitted).  Plaintiff's pretext argument is based on the fact that Defendant hired 46 teachers with CDCs.  For many of the same reasons as discussed above in relation to Plaintiff's *prima facie* case, the record does not support such an allegation of pretext.  Ten of the teachers with CDCs were African American, and Plaintiff has presented no evidence showing that any of the teachers with CDCs did not meet

18

Defendant's criteria for a CDC or were otherwise similarly situated to Plaintiff.  There is simply no evidence showing that either Defendant's policy to reduce the number of teachers with CDCs or its application to Plaintiff was disingenuous or a pretext for discrimination.  The record shows that Defendant, relying in part on Plaintiff's references, believed that Plaintiff did not satisfy the criteria for obtaining a CDC. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of nondiscriminatory reasons for an adverse employment action." *Hawkins*, 203 F.3d at 281 (citation and internal quotation marks omitted).  Accordingly, Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reasons for declining her requests for a CDC were pretext for discrimination.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant will be granted.  The motion for summary judgment filed by Plaintiff will be denied, and her motion to deny a jury trial will be denied as moot.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
